IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAY DOBSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:26-CV-529-G-BW |
| | § | |
| BRIDGESTONE AMERICAS, INC., | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**
**OF THE UNITED STATES MAGISTRATE JUDGE**

In the six months since this action was removed from state court—including two months in which the case was abated—pro se Plaintiff Jay Dobson has filed approximately 89 motions, notices, and other documents. Almost all the filings have been unmeritorious, duplicative, and vexatious, and they advanced positions or urged relief that was already before the Court or that the Court had already ruled on. Dobson submitted many of those documents in defiance of court orders prohibiting him from filing them and warning him of potential sanctions. His contumacious conduct has hampered the Court's ability to efficiently manage its docket and prevented the orderly progression of this case.

[1] This action has been automatically referred to the undersigned magistrate judge for case management by Special Order 3-251. (*See* Dkt. No. 4.)

For reasons explained below, the undersigned magistrate judge recommends that this action be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b) due to Plaintiff's persistent contumaciousness and defiance of court orders.

## I. BACKGROUND

Dobson filed this action in the 44th Judicial District Court for Dallas County, Texas, on January 16, 2026. (*See* Dkt. No. 1-3 at 6-7, 16.) Dobson's claims arise out of a single-car accident involving Dobson's wife after leaving a Firestone car care center. (*See* Dkt. No. 88 at 7.) The Dobsons presented a claim to the company, entered into a settlement, and received a payment. (*See id.*) In his lawsuit, Dobson alleges that Defendant Bridgestone Americas, Inc. violated the Texas Insurance Code and the Texas Deceptive Trade Practices Act in connection with that settlement or the underlying claim. (*See* Dkt. No. 1-3 at ECF pp. 16-17.) Dobson also named Amy Hardy, an employee, as a defendant in the action. (*See id.* at ECF p. 16.)

Bridgestone removed the case to federal court on February 18 based on the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Dkt. No. 1.) It alleged that Dobson is a citizen of Texas, Bridgestone is a citizen of Tennessee and Nevada, and Hardy is a citizen of Tennessee. (*See id.* at 1-2.) Bridgestone pointed to a filing by Dobson in state court indicating that he sought damages totaling more than $500,000. (*See id.* at 3.) Because Dobson's petition included a claim under the Texas Deceptive Trade Practices Act ("DTPA") for which Bridgestone alleged he had not

given pre-suit notice, Bridgestone filed a motion seeking an order abating the lawsuit for 60 days as required by Tex. Bus. & Com. Code § 17.505. (Dkt. No. 8.)

Within two days after removal, Dobson began filing numerous motions and "notices," including filings seeking to remand, to preclude Defendant from filing motions or other documents in this action, or other immediate relief. (*See, e.g.*, Dkt. Nos. 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19.) Dobson asserted in those filings that a provision of the Texas Insurance Code prevented Bridgestone from appearing or filing documents in this case without first posting a bond and argued that there was a "lockout" that prevented Bridgestone from removing the case or taking other action. He also averred that fraud was committed with respect to the timing of Bridgestone's removal.

On March 3, the undersigned set a briefing schedule on Bridgestone's motion to stay and on Dobson's motions to remand. (*See* Dkt. No. 20.) In the order, the undersigned pointed Dobson to the court's local rules concerning briefing practice, including rules requiring a pre-motion conference and briefing deadlines. (*Id.* at 2.) Importantly, the order stated that the parties were to file "[n]o other supplemental pleadings, briefs, or evidence or other documents" in connection with the pending motions without leave of court. (*Id.* at 3.)

Dobson did not heed that order. On March 3 and 4, he filed 10 additional documents seeking remand, including filings accusing Bridgestone of fraudulently

removing the action and criminal contempt. (Dkt. Nos. 21, 22, 23, 24, 25, 26, 27, 28, 29, 30.) He also filed a response to Bridgestone's motion to stay. (Dkt. No. 41.)

The undersigned entered two orders on March 5. First, the Court denied Dobson's duplicative motions to remand—styled as emergencies—because he had already filed motions to remand that were not yet ripe and that would be resolved in due course. (Dkt. No. 32.) Second, the undersigned granted Bridgestone's motion for abatement pursuant to Tex. Bus. & Com. Code § 17.505 and ordered that the case be abated until May 4, 2026. (Dkt. No. 33.) Until then, the parties were ordered to "refrain from filing any notice, motion, or other pleading . . . without first seeking leave of court, which will be granted only on good cause." (*Id.* at 3.)

Dobson exhibited no greater regard for that order. The next day, he filed an Emergency Motion to Remand and Notice of Constitutional Violations contesting the Court's jurisdiction and objecting to an unspecified order filed after February 11 as legally void and violating his constitutional rights. (Dkt. No. 34 at 1.) The undersigned denied the emergency motion because Dobson did not seek leave to file it, and because the pending motions to remand would be addressed once the abatement period had passed. (Dkt. No. 35.)

Dobson continued to file duplicative motions. On March 10, he filed five additional motions or "notices" seeking remand to state court and sanctions against defense counsel. (Dkt. Nos. 38, 39, 40, 41, 42.) The following day, the undersigned denied any relief sought in those filings because Dobson did not seek leave to file

them. (Dkt. No. 43.) The undersigned issued Dobson his **first warning** that his litigation conduct could result in sanctions:

> Dobson's persistence in filing motions and notices without seeking leave appears to be due to a deliberate decision to disregard the Court's March 5 order rather than any inadvertence or excusable oversight on his part. Dobson is warned that continuing to file materials in this case during the period of abatement without seeking leave of court may result in sanctions, including a recommendation that this action be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b) for failure to comply with court orders and contumacious conduct. *See Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 710-11 (N.D. Tex. 2018) ("A clear record of contumacious conduct exists when the plaintiff has deliberately exhibited a 'stubborn resistance to authority.'" (quoting *Millan v. USAA General Indemnity Co.*, 546 F.3d 321, 327 (5th Cir. 2008)).

(Dkt. No. 43 at 2-3.)

Later that same day, Dobson filed a Motion for Emergency Leave to File Notice of Mandatory Remand (Dkt. No. 44), which the Court denied (Dkt. No. 45). The following day, he filed a Response and Brief in Opposition to Defendant's Motion to Stay—a motion to which Dobson had already responded and that the Court had already granted. (Dkt. No. 46.)

On March 19, Dobson filed an Urgent Motion for Leave to File Motion to Reconsider Order of Abatement and Request for Judicial Notice. (Dkt. No. 50.) Then, on March 24, he filed five additional documents, most of which urged remand and only one of which he sought leave to file. (*See* Dkt. No. 51, 52, 53, 54, 55.) Two days later, Dobson filed a request for entry of default—again, without leave—and a motion for leave to file objections to the undersigned's order. (*See* Dkt. Nos. 56, 57.)

He filed another request to file objections on April 8. (Dkt. No. 59.)[2] On April 9 and 10, Dobson filed seven more filings seeking to "enforce" a "lockdown," to remand, or other relief. (*See* Dkt. Nos. 61, 62, 63, 64, 65, 66, 67.) He followed those filings on April 15 with an Urgent Motion to Strike and Request for Entry of Default (Dkt. No. 69) and a Notice of Procedural Void and Witness Disqualification (Dkt. No. 70).

Still in the abatement period, the undersigned issued Dobson a **second warning** on April 17. (*See* Dkt. No. 72.) It recalled the March 5 order and noted Dobson's continued practice of "fil[ing] numerous motions and notices reiterating his insistence that this case be remanded to state court." (*Id.* at 1.) It also recited the prior warning to Dobson and determined that none of the subsequent filings (*see* Dkt. Nos. 50, 59, 62, 63, 64, 67, 69) exhibited good cause warranting their consideration during the abatement period. (Dkt. No. 72 at 2.) The undersigned again explained that Dobson's filings sought relief that was already presented to the Court in Dobson's prior motions and would be addressed after the abatement period. (*Id.* at 2.) The undersigned further stated that Dobson's "persistent filings requesting relief that the Court has already denied or that will be resolved after the abatement period in violation of the abatement order serve no purpose except to harass, annoy, multiply the proceedings, or undermine the statutory abatement period." (*Id.* at 2-3.)

[2] Senior United States District Judge A. Joe Fish considered Dobson's filings seeking to object to the undersigned's orders and denied his objections. (*See* Dkt. No. 71.)

The undersigned found that Dobson's continued filings "belie any suggestion that Plaintiff's persistent disregard of the abatement order results from negligence, a misunderstanding, or a lack of legal training" and instead "exhibit[ed] defiance of the Court's orders and insistence that the Court rule immediately on his remand motion despite its provision for consideration of the motions at an appropriate time." (*Id.* at 3.) Although Dobson continued to exhibit contumacious conduct, the undersigned expressed a preference to resolve this case on its merits rather than through sanctions and a belief that Dobson would discontinue his tactics. (*Id.*) Finally, the order required Dobson "to refrain from filing any notice, motion, or other filing—including after the abatement period ends—until the Court has resolved the pending motions to remand," except that Dobson was authorized to file a reply in support of his motions to remand at an appropriate time. (*Id.* at 3-4.) The undersigned warned Dobson that if he violated the order, the Court would consider sanctions, including dismissal of the case with prejudice. (*Id.* at 4.)

Dobson disregarded that order soon thereafter. From May 1 to May 6, he filed 12 additional documents. (*See* Dkt. Nos. 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 86, 87.) On May 7, the undersigned issued an order striking many of those filings made "in stark defiance" of the prior orders. (Dkt. No. 85.) The undersigned found that Dobson "continued to exhibit contumacious conduct by repeatedly defying Court orders" and that his persistent conduct interfered with the Court's stated intention to resolve the case on the merits. (*Id.* at 2.) Therefore, the undersigned

ordered Dobson to show cause in writing why the case should not be dismissed with prejudice pursuant to Rule 41(b). (*Id.*) The undersigned permitted Dobson to file one—and only one—response to the show cause order.

Dobson filed a single response to the show cause order. (*See* Dkt. No. 89.) In it, he dismissed his claims against Hardy, requested judicial notice of the record, alleged a criminal conspiracy among defense counsel and client, discussed a mandamus action pending in the Fifth Circuit, and requested that the Court notice a $47,000,000 default against Bridgestone. (*See id.*) Then, on May 15, he filed his authorized reply in support of his pending motions for remand and sanctions. (Dkt. No. 90.)

On May 18, the undersigned elected not to recommend dismissal of this case despite Dobson's failure to explain why his contumacious conduct did not justify that sanction. (*See* Dkt. No. 92.) The undersigned declined to recommend dismissal sanctions because the record suggested some of the filings in this case were not immediately delivered to Dobson—although he bore responsibility for that by failing to enroll in electronic notice as required—and because his single response to the show cause order—albeit lacking in substance—"demonstrate[d] that [Dobson] is capable of following rules and court orders." (*Id.* at 4.) Even though dismissal was not recommended at that time, the undersigned provided Dobson a **third warning**—stating that "[i]f [he] returns to the conduct that precipitated that Order to Show Cause—such as by filing frivolous, malicious, abusive, or vexatious filings—the

Court may reconsider its decision and recommend dismissal of this action." (*Id.* at 4-5.)

The undersigned also filed findings, conclusions, and a recommendation that Dobson's motions to remand and associated motions for sanctions be denied. (Dkt. No. 93 ("FCR").) The FCR addressed many of the assertions underlying Dobson's plethora of filings. First, it explained that the Texas Insurance Code does not apply to Bridgestone because it is not an insurer and did not provide insurance in connection with the prior settlement of the Dobsons' claim. (*See* FCR at 6-7.) It rejected Dobson's assertion of fraud in connection with removal as nonsensical and unmeritorious. (*See id.* at 7-8.) And it rejected all of Dobson's other arguments for remand. (*See id.* at 8-9.) The FCR determined that the case was properly removed under § 1332(a). (*See id.* at 5-6.) After considering Dobson's objections (*see* Dkt. No. 96), Senior United States District Judge A. Joe Fish adopted the recommendation and denied Dobson's motions for remand and sanctions. (Dkt. No. 97.) The undersigned entered a scheduling order for the case on June 17. (*See* Dkt. No. 102.)

After a brief respite, Dobson resumed his practice of vexatious filing. On June 29, he filed a Notice of Procedural Default, Discovery Lockout, Fraudulent Service Timeline, and Request for Transfer. (Dkt. No. 107.) On July 10, he filed a Motion to Compel Compliance with 28 U.S.C. 1450 and 28 U.S.C. 1738, which re-urged his contention that the Court lacks jurisdiction. (*See* Dkt. No. 110.) That same day, he filed a motion to strike Bridgestone's response to his motions, re-arguing that

Defendant was prohibited from filing in this case after February 17. (*See* Dkt. No. 111.) On July 22, Dobson filed a motion "to vacate" and to remand the action to state court parroting his assertion that the case was improperly removed, along with a supplemental brief. (Dkt. Nos. 120, 121.) That same day—and again on July 27—Dobson filed a Motion for Written Ruling and Immediate Mandatory Remand Pursuant to Federal Rule of Civil Procedure 12(h)(3), Federal Rule of Civil Procedure 60(d)(3), and Hain Celestial. (Dkt. Nos. 123, 124.) On July 27, he also filed a supplemental brief arguing for remand (Dkt. No. 125) and two responses to Bridgestone's motion to compel Dobson to provide the initial disclosures required by Fed. R. Civ. P. 26(a) (Dkt. Nos. 126, 127; *see also* Dkt. No. 121).

On July 30, the undersigned provided a **fourth warning** to Dobson to cease filing frivolous motions seeking remand to state court. (Dkt. No. 128.) The undersigned recounted the prior promise to reconsider the decision not to recommend dismissal if Dobson returned to the contumacious conduct that precipitated the order to show cause. (*Id.* at 1-2.) The order stated, "Plaintiff is given this **final warning** that continued vexatious filings may result in sanctions, including involuntary dismissal under Fed. R. Civ. P. 41(b)." (*Id.* at 2 (emphasis added).)

On August 5, Dobson filed several more documents, including duplicative filings that might be construed as replies to Bridgestone's response to Dobson's motion to strike. (*See* Dkt. Nos. 135, 136.) He filed additional documents that, to the extent they are comprehensible, contend this action was wrongfully removed.

(Dkt. Nos. 138, 139.) He slightly modified those documents and filed the document a third time the same day. (Dkt. Nos. 139.) He filed a fourth document asserting that a "lockout" occurred in state court and that timestamps in state court were fabricated. (Dkt. No. 140.) Then, on August 11, Dobson filed a Notice of Errata and Clerical Correction Request. (Dkt. No. 141.)

## II. LEGAL STANDARDS AND ANALYSIS

"District courts have the authority, pursuant to both their own '"inherent power' . . . to manage their own affairs" and Rule 41(b) of the Federal Rules of Civil Procedure, to dismiss cases with prejudice for failure to prosecute." *Gates v. Strain*, 885 F.3d 874, 883 (5th Cir. 2018) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Dismissal with prejudice, however, is a "severe" sanction. *See id.* "Dismissal with prejudice is appropriate only where there is 'a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice.'" *Id.* (quoting *Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 251 (5th Cir. 1984)). "A clear record of contumacious conduct exists when the plaintiff has deliberately exhibited a 'stubborn resistance to authority.'" *Springboards to Educ., Inc. v. Kipp Found.*, 325 F. Supp. 3d 704, 711 (N.D. Tex. 2018) (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008)).

The Fifth Circuit has stated generally that it "affirm[s] dismissals with prejudice . . . where those prerequisites are accompanied by 'certain "aggravating

factors," such as (1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, (2) the degree of actual prejudice to the defendant, and (3) whether the delay was the result of intentional conduct.'" *Gates v. Strain*, 885 F.3d at 883 (quoting *Morris*, 730 F.2d at 252); *see also Naylor v. Town of Rayville*, No. 25-30737, 2026 WL 2168913, at *2 (5th Cir. July 28, 2026) (unpublished). Although the court has discretion whether to employ dismissal sanctions for disobedience with court orders, such sanction generally should be reserved for circumstances where "plaintiff's conduct has threatened the integrity of the judicial process, . . . leaving the court no choice but to deny that plaintiff its benefits." *Springboards to Educ.*, 325 F. Supp. 3d at 711 (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)).

Dobson has exhibited a clear and persistent record of contumacious conduct. As detailed above, from the week this action was removed, Dobson has continually filed motions seeking relief—most notably, for remand or to prevent Bridgestone's participation in this lawsuit—that were been already presented in pending filings or that the Court had already denied. Even after the Court abated the case as required by Texas statute and instructed the parties to file no motions or notices without leave of court, Dobson repeatedly violated that order by filing documents without leave. When warned that his filings were unmeritorious and filed without leave, he simply filed more of them but nominally sought leave to do so. And even after Dobson's motion to remand had been denied, he continued re-arguing his positions through

incessant filings—contesting jurisdiction, insisting that a "lockout" occurred in state court, and arguing that Bridgestone cannot defend itself in this action under Dobson's reading of the Texas Insurance Code. Dobson's repeated filings—many of them duplicates or near-duplicates—exhibit his recalcitrance and refusal to accept the Court's rulings. They additionally demonstrate his intention to be petulant and demand the Court's attention until either Defendant or the Court gives him what he wants. As expressed in the April 17 order and reinforced since, Dobson's conduct results from a willful disregard of court orders. (*See* Dkt. No. 72 at 3.) Additionally, he has amplified the "harass[ment], annoy[ance], [and] multipl[ication of] the proceedings" resulting from his contumaciousness. (*See id.*)

Dobson's conduct has prejudiced Bridgestone by requiring it to respond to duplicative motions and allegations of misconduct, and it has interfered with the Court's orderly management of its docket. Dobson's persistent refiling of motions and notices insisting on immediate attention and refusing to accept the Court's rulings have required numerous interventions. The undersigned tolerated Dobson's contemptuous behavior for some time based on a preference to give Dobson a resolution of his claims on the merits, which he presumably desires. But Dobson's repeated flaunting of court orders and disregard of at least four warnings has shown that he will not follow court orders and will not conduct himself in a manner that is expected of litigants, including pro se litigants, in federal court. *See Cartman v. Hunt County Texas*, No. 3:15-CV-481-L, 2015 WL 3795558, at *2 (N.D. Tex. June 18,

2015) ("Petitioner's pro se status does not relieve him from complying with relevant procedural rules, substantive law, or the court's orders."). His persistent defiance of orders constitutes a "stubborn resistance to authority" that exemplifies contumaciousness. *See Millan*, 546 F.3d at 327.

Dobson has demonstrated that lesser sanctions have not been and will not be effective. As detailed above, he has willfully disregarded clear orders and repeated warnings to refrain from filing motions, notices, and other documents, and his unauthorized filings seek relief that has already been presented the Court or denied. The undersigned can find no reason to believe that Dobson would comply with any order imposing a lesser sanction, including a monetary penalty or greater restrictions on filing documents. Dobson's frequent filings during the abatement period and after—in direct contravention of court orders—demonstrates that, if this action is allowed to continue, the Court should expect that Dobson will continue to file—and refile—documents as he chooses without regard for court orders and procedural rules.

The Fifth Circuit's recent affirmance of dismissal for repeated violations of court orders corroborates that the sanction is appropriate here. *See Naylor*, 2026 WL 2168913. Like the plaintiff in *Naylor*, Dobson has insisted on "prosecuting this case on [his] terms," and he has demonstrated that he will not participate in this action in good faith. *See id.* at *2. He, too, has not been deterred by lesser sanctions and has ignored multiple warnings that his conduct may result in dismissal of the action. *See*

*id.* (noting plaintiff's "repeated failure to heed this warning shows that lesser sanctions would be futile"). Other pro se parties have met a similar fate based on similar conduct. *See, e.g.*, *Barnes v. Tumlinson*, 597 F. App'x 798 (5th Cir. 2015) (affirming dismissal where pro se plaintiff, after filing hundreds of pages of pleadings, did not comply with court order to file a single page-limited complaint); *Hearn v. Bd. of Supervisors of Hinds Cnty., Miss.*, 575 F. App'x 239, 243-44 (5th Cir. 2014) (affirming dismissal where pro se plaintiff "filed more than 50 separate motions, most of which were not truly motions, but instead rehashed or supplemented arguments that she previously made in prior motions" and failed to comply with a "cease-fire order").

## III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Judge **DISMISS** this action **WITH PREJUDICE** pursuant to Fed. R. Civ. P. 41(b) for contumacious conduct and failure to follow court orders.

**SO RECOMMENDED** on August 13, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).